# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

October 2, 2023

**Via ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __10-11-23__

Re:   **United States v. Keith Glenn**
       **21 Cr. 129 (ALC)**

Dear Judge Carter:

I write on behalf of Keith Glenn to respectfully request, pursuant to 18 U.S.C. § 3583(e)(1) and Federal Rule of Criminal Procedure 32.1(c)(2)(B), that the Court terminate Mr. Glenn's remaining three and a half months of supervised release. Mr. Glenn has had a solid record on supervision, completing job training programs and incurring no violations or other issues requiring Court intervention. Mr. Glenn has struggled to secure stable, full-time employment, but was recently offered employment as a long-haul commercial trucking driver. Mr. Glenn strongly wishes to accept this position as soon as possible, but employment as a long-haul driver would be incompatible with the conditions of his supervised release—including restrictions on his out-of-District travel and the need to be available for random drug tests, office visits, or home visits from Probation.

Given Mr. Glenn's successful reintegration into society, he no longer needs rehabilitative support from the Probation Department, which already has him on the lowest level of monitoring. Mr. Glenn's Probation Officer does not object to early termination of his supervised release. The Government also does not oppose this request. For these reasons, we respectfully request that the Court terminate Mr. Glenn's remaining period of supervision so that he can accept full-time employment and continue on his path to building a stable life for himself.

## I.    Background

In October 2013, before the United States District Court for the Southern District of West Virginia, Mr. Glenn pleaded guilty to one count of possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). In February 2015, Mr. Glenn was sentenced to 110 months' incarceration and three years' supervised release. Mr. Glenn completed the custodial portion of his sentence on January 13, 2021, and commenced his term of supervised release in the Southern District of New York. This term of supervised release is due to expire on January 13, 2024.

**United States v. Keith Glenn**
**21 Cr. 129 (ALC)**

Because Mr. Glenn has completed more than one year of supervision, the Court may terminate the remaining period of his supervised release if it finds early termination is warranted by his conduct on release and is "in the interests of justice." 18 U.S.C. § 3583(e)(1).

## II.    Mr. Glenn Has Successfully Reintegrated into the Community

Since his release from incarceration more than two and a half years ago, Mr. Glenn has demonstrated a clear commitment and ability to live a productive, law-abiding life. Mr. Glenn has maintained a clean supervision record, with no violations or failed drug tests, or any other issues requiring Court intervention. Although Mr. Glenn was issued a citation for alleged traffic infractions in March 2023, these alleged infractions and a corresponding Desk Appearance Ticket (DAT) that Mr. Glenn was issued were dismissed and sealed. Mr. Glenn has had no other law enforcement interactions during his supervised release.

Mr. Glenn has resided with his mother and brother in New York since his release, and he has contributed to the upkeep and financial obligations of the family's home. Mr. Glenn has had several periods of part-time and freelance employment, and strongly wishes that he could provide more support for himself and his family, but he has had difficulty securing a full-time job with benefits that would afford him the stability and independence that he desires. The part-time work Mr. Glenn has performed to date has too often been sporadic, unpredictable, and insufficiently remunerative, which has inhibited his growth.

To address this issue, Mr. Glenn has taken the initiative to complete job training and licensing programs that would better position him for full-time employment. For example, earlier this year, he completed a multi-hour Commercial Driver's License training program with the Center for Employment Opportunities (CEO), a program dedicated to helping individuals with incarceration history secure long-term employment.[1] Given the nationwide shortage of long-haul truckers,[2] Mr. Glenn saw this as a particularly enticing job opportunity that might provide him long-term employment.

In September 2023, Mr. Glenn applied for and was offered a position with Western Express, Inc., a nationwide trucking company based in Nashville.[3] Mr. Glenn completed hours of additional online training across more than 30 subjects and was invited to participate in in-person training in Nashville. However, after further discussion with his hiring manager and Probation regarding the strictures of his supervised release, Mr. Glenn was unable to pursue this position.

Specifically, after Mr. Glenn's recruiter was informed that Mr. Glenn was subject to conditions of supervised release including the need to get pre-approval for out of District travel

---

[1]  *See* https://www.ceoworks.org/mission (last visited Sept. 29, 2023).

[2]  *See, e.g.*, M. Cerullo, "Low pay, grueling work fuels trucker shortage," CBSNews (Apr. 5, 2022), https://www.cbsnews.com/news/truck-driver-shortage-biden-administration/ (last visited Sept. 29, 2023).

[3]  *See* https://www.westernexp.com/ (last visited Sept. 29, 2023).

**United States v. Keith Glenn**
**21 Cr. 129 (ALC)**

and to report for random drug tests,[4] office visits, or home visits, Western Express told Mr. Glenn it could not move forward with his hiring and asked him to reapply when his supervision was completed. The undersigned spoke by phone with a Western Express recruiter on September 26, 2023, who confirmed that, should Mr. Glenn's supervised release be terminated, he would be immediately hirable as a driver for the company.

### III.    The Court Should Terminate Mr. Glenn's Supervised Release

In light of this record on supervision, Mr. Glenn no longer needs the support or structure of supervised release to assist him in his transition back into the community. To the contrary, the restrictions of supervised release at this point serve only to impede Mr. Glenn's efforts to fully reintegrate into society as an independent, law-abiding citizen. While he remains on supervision, Mr. Glenn is limited in the types of employment he can seek, as his experience with Western Express demonstrates. In addition, many employment applications require applicants to disclose if they are currently serving a period of supervision, probation, or parole.

Perhaps as importantly, as long as Mr. Glenn remains on supervised release, he remains inextricably tied to the past unlawful conduct that he has worked diligently to move on from. Even if his reporting requirements and other restrictions might seem limited, they still exist for Mr. Glenn both as a real hindrance and as a constant reminder of his past shortcomings.

As the Supreme Court has explained, [s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Rather than serving as a fundamental "part of the punishment," the purpose of supervised release is rehabilitation. *United States v. Bethea*, No. 05 Cr. 1234 (DC), 2015 WL 13776431, at *1 (S.D.N.Y. Dec. 7, 2015) (citing *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015)).

Accordingly, after considering the Section 3553(a) factors, the Court may terminate a remaining term of supervised release if the defendant has completed one year of supervision and the Court finds that early termination "is warranted by the conduct of the defendant released and in the interests of justice." 18 U.S.C. § 3583(e)(1). When a defendant's "exceptionally good behavior" renders his previously imposed supervision term "either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)," early termination is appropriate. *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997); *see United States v. Rasco*, No. 88 Cr. 817 (CSH), 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000). The Court has broad discretion in determining whether and for what reason to terminate supervision and can grant early termination even absent any "new or changed circumstances." *United States v. Parisi*, 821 F.3d 342, 347 (2d Cir. 2016). Courts in this District have granted early termination in light of the defendant's "exceptionally good behavior" when the defendant has been fully compliant with supervision and "taken considerable strides in reintegrating into his community through employment and service to his family." *United States v. Erskine*, 05 Cr. 1234 (DC), 2021 WL 861270, at *2 (S.D.N.Y. March 8, 2021).

---

[4]    It is worth noting that, if Mr. Glenn were hired as a truck driver for Western Express, the company would also subject him to mandated drug testing.

**United States v. Keith Glenn**
**21 Cr. 129 (ALC)**

Mr. Glenn's law-abiding conduct, full-time employment prospects, and continued improvement as a person demonstrate he has adjusted well to life in the community. He has continued to strengthen his family relationships and surround himself with positive people and is committed to doing so as he moves forward. In short, Mr. Glenn does not require further supervision for purposes of rehabilitation and the restrictions imposed on Mr. Glenn's life from continued supervision serve no purpose.

Lastly, Mr. Glenn has already suffered enhanced punishment due to his incarceration and restriction in the halfway house during the peak of the COVID-19 pandemic in 2020. As multiple courts in this District have recognized, incarceration during the first year of the COVID-19 pandemic was exceptionally punishing, and these conditions resulted in a period of incarceration and detention in the halfway house that was more punitive than necessary. *Cf., e.g., United States v. Gonzalez*, 18 Cr. 669 (JPO) (S.D.N.Y. Apr. 2, 2021), Dkt. 250, Tr. 17:17–18:3 (describing the "extraordinarily harsh" conditions of near-constant lockdowns as "basically like solitary confinement," and noting that "because it's been harsher than a usual period that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served"); *United States v. Cirino*, 19 Cr. 323 (JSR) (S.D.N.Y. July 17, 2020), Tr. 11:11–15 ("[I]t is fair to say that conditions in the prison system now result in a harshness that is not the norm and that ought to be recognized by the court as a mitigating factor. In effect, you are serving a harder time every day you are in the federal prisons."); *United States v. Aracena de Jesus*, No. 20 Cr. 19 (PAE) (S.D.N.Y. July 1, 2020), Tr. 37:6–11 ("Bottom line, your time in the MCC was way harder than anyone intended when you were detained following your arrest."). The interests of justice weigh in favor of accounting for this additional punishment.

Accordingly, for the foregoing reasons, we respectfully request that the Court terminate Mr. Glenn's term of supervised release. We stand ready to provide additional information, should the Court have any questions.

Respectfully submitted,

/s/ Neil Kelly

Neil P. Kelly
Assistant Federal Defender
Tel: (212) 417-8744

cc:   AUSA William Stone
      United States Probation Officer Amber Wilton

The application is ✓ granted.
___ denied.

Andrew L. Carter Jr, U.S.D.J.
Dated: October 11, 2023
NY, New York

4